UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA PLOTKOWSKI,

　　　Plaintiff,                          Case No. 2:20-cv-12011

                                        District Judge Gershwin A. Drain
v.                                      Magistrate Judge Kimberly G. Altman

COMMISSIONER OF SOCIAL
SECURITY,

　　　Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

### I.　　Introduction

This is a Social Security case.  Plaintiff Linda Plotkowski ("Plotkowski")

brings this action under 42 U.S.C. § 405(g), challenging the final decision of

Defendant Commissioner of Social Security ("Commissioner") denying her

application for Disability Insurance Benefits ("DIB") under the Social Security

Act ("the Act").  Both parties have filed summary judgment motions (ECF Nos.

1

12, 15), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, it is RECOMMENDED that the Commissioner's for Summary Judgment (ECF No. 15) be GRANTED and that Plotkowski's Motion for Summary Judgment (ECF No. 12) be DENIED and the Commissioner's decision be AFFIRMED.

## II.      Background

### A.      Procedural History

Plotkowski was 61 years old at the time of the November 22, 2018 alleged onset date.  (ECF No. 10-5, PageID.252).  She worked previously as a customer service provider at a photography studio and school secretary.  (ECF No. 10-6, PageID.277).  She alleges disability due to hypertension, diabetes mellitus, asthma, anxiety, depression, overactive bladder, arthritis, detached retinal defect of the right eye, psoriasis, and cutaneous lupus erythematosus.[1]  (*Id.*, PageID.275).

After Plotkowski's DIB application was denied at the initial level on June 24, 2019, she timely requested an administrative hearing, held January 17, 2020, before Administrative Law Judge ("ALJ") Virginia Herring.  (ECF No. 10-2,

---

[1] Cutaneous lupus erythematosus is a skin condition "often induced by sunlight" and most commonly characterized by "scaly patches that often appear on the cheeks, nose and ears."  https://www.americanskin.org/resource/lupus.php. (Last visited January 10, 2022).

PageID.108;ECF No. 10-4, PageID.180).  Plotkowski, represented by non-attorney representative Stephanie Winbigler, testified, as did a Vocational Expert ("VE").  (ECF No. 10-2, PageID.113-136, 137-142).

Plotkowski offered the following testimony at the hearing:

She was 62 at the time of the hearing.  (*Id.*, PageID.113).  She lived with her husband and adult daughter.  (*Id.*).  She stayed at home alone while her husband and daughter worked.  (*Id.*, PageID.113-114).  She was able to drive short distances several times a week including trips to the gym and doctor's appointments.  (*Id.*, PageID.114).  Her husband accompanied her on grocery trips due to her inability to lift shopping bags.  (*Id.*, PageID.115).  She could walk up to 30 minutes while using a shopping cart for support.  (*Id.*, PageID.123).  She drove herself to the hearing.  (*Id.*, PageID.115).

Plotkowski held two associate's degrees.  (*Id.*).  She last worked at a photographic studio performing seasonal, part-time work.  (*Id.*).  She had not worked since the previous spring.  (*Id.*).  After ceasing work, she collected unemployment benefits.  (*Id.*, PageID.116).  While collecting unemployment benefits, she looked for part-time, "closer to home" work but did not find anything.  (*Id.*).

Her work at the photographic studio entailed answering phones, documenting orders on a computer, and answering customers' questions.  (*Id.*). The position did not require any significant lifting.  (*Id.*, PageID.118).  She worked for 30 years as a school secretary until June 2017.  (*Id.*).  The position required her to lift up to 30 pounds, process "a lot of paperwork," and included interaction with sick students and the police.  (*Id.*, PageID.117, 119).

Plotkowski testified that as of the date of the hearing, she was unable to perform any work due to her inability to stand/walk, shortness of breath, and upper body and back pain preventing sit-down work.  (*Id.*, PageID.119).  She was unable to sit for even 15 minutes without discomfort.  (*Id.*, PageID.120).  She also experienced foot pain.  (*Id.*).  Notwithstanding the physical problems, she went to the gym two or three times a week where she stretched and walked on a treadmill for 10 to 15 minutes at a low speed.  (*Id.*, PageID.120, 122).  The use of an inhaler provided only sporadic relief from breathing problems.  (*Id.*, PageID.125).

 Plotkowski also experienced stress, anxiety, and concentrational problems due to her physical limitations.  (*Id.*, PageID.126).  Prescribed medications caused weight gain.  (*Id.*, PageID.127).  She experienced chronic fatigue.  (*Id.*).  On a typical day, she awoke no earlier than 7:00 a.m., made coffee, ate breakfast, took medications, washed, and dressed.  (*Id.*).  She was able to independently monitor and take prescribed medications.  (*Id.*, PageID.128).  She experienced frequent

urination up to three times an hour and avoided drinking water or coffee before car trips.  (*Id.*, PageID.130).  She also experienced fecal incontinence requiring her to wear protective clothing.  (*Id.*, PageID.131).  She experienced accidents approximately five times a week.  (*Id.*).

In response to questioning by her representative, Plotkowski reported that after using a treadmill she required rest and water.  (*Id.*, PageID.132).  She spent "at least 55 percent" of her waking hours resting in a reclining chair.  (*Id.*, PageID.134).  Her household activities were limited to "minimal dusting."  (*Id.*, PageID.135).

On February 5, 2020, the ALJ determined that Plotkowski was not disabled. (*Id.*, PageID.81-101).  On June 8, 2020, the Appeals Council denied review of the ALJ's findings, making the ALJ's decision the final decision of the Commissioner.  (*Id.*, PageID.57-60).  The Appeals Council considered but declined to review medical evidence dated after ALJ's decision.[2]  (*Id.*, PageID.58).  Plotkowski timely filed for judicial review of the final decision on July 28, 2020.

---

[2] Plotkowski does not rely on any of the more recently submitted material in support of her arguments for summary judgment.

B.     Medical Evidence[3]

February 2012 records note a diagnosis of lupus erythematosus.  (ECF No. 10-9, PageID.785).  November 2018 records note a history of retinal detachment of the right eye without complications following 2014 surgery.  (ECF No. 10-12, PageID.1261).

In March 2019, long-time treating source rheumatologist Allan H. Morton, D.O. composed a letter on Plotkowski's behalf stating that she was disabled due to "multiple diagnoses," including psoriatic arthritis and osteoarthritis of the lumbar spine.  (ECF No. 10-7, PageID.531) *see also* (ECF No. 10-9, PageID.851).  April 2019 records by Anne Allen, M.D. of University of Michigan hospital state that Plotkowski's skin conditions were either resolved or "well-controlled."  (*Id.*, PageID.535).  Plotkowski was "well-appearing and in no acute distress" with full muscle strength in the lower extremities.  (*Id.*, PageID.536).  The same month, rheumatology records by Jacqueline Madison, M.D. of the University of Michigan hospital state that Plotkowski had "overall been doing well."  (*Id.*, PageID.538).

---

[3] Plotkowski does not challenge the ALJ's weighing of the medical evidence.  (ECF No. 12, PageID.1471, n. 1).  Aside from her contention that her husband's report was not accurately summarized, she argues only that internal inconsistencies in the ALJ's findings warrant a remand for further fact-finding. The undersigned has nonetheless reviewed the medical records.

6

Plotkowski reported that since recent foot surgery, she attended physical therapy three times a week and that the physical therapy felt "wonderful on her shoulders." (*Id.*). She exhibited a full range of cervical spine and extremity motion. (*Id.*, PageID.540). In May 2019, Dr. Morton composed a second letter on Plotkowski's behalf, noting that it was "important that she remain very active." (ECF No. 10-10, PageID.873). He recommended an exercise program "to facilitate range of motion, decrease pain, maintain strength" and lose weight. (*Id.*). Treating records from the same month note normal orientation, memory, mood, affect, and judgment. (*Id.*, PageID.1019). June 2019 records note Plotkowski's report of "occasional lower back pain and generalized pain" due to fibromyalgia. (*Id.*, PageID.1028). An examination of the hands showed "no evidence [of] weakness." (*Id.*) *see also* (*Id.*, PageID.1051).

In June 2019, Shelley Galasso Bonanno, M.A., working under the direction of psychologist Lisa Silverman, Ph.D., performed a consultative psychological examination on behalf of the SSA, noting Plotkowski's report of "longstanding symptoms of anxiety and depression." (ECF No. 10-8, PageID.669). Plotkowski also reported that she was currently performing " ' seasonal work'" for a school picture photographer. (*Id.*). Plotkowski appeared depressed but was fully oriented with a normal memory and judgment. (*Id.*, PageID.671-672). Bonanno

gave Plotkowski a "guarded" prognosis but found that she could manage her benefit funds.  (*Id.*).

The same month, Kelly Donovan, D.O. performed a non-examining assessment of Plotkowski's physical work-related abilities on behalf of the SSA, finding that Plotkowski could lift/carry a maximum of 10 pounds; sit for six hours in an eight-hour workday and stand/walk for two; and push and pull without limitation.  (ECF No. 10-3, PageID.171).  Dr. Donovan found that Plotkowski could perform postural activity on an occasional basis except for balancing, which she found that Plotkowski could do on a frequent basis.  (*Id.*, PageID.171).  She found that Plotkowski was limited to frequent bilateral reaching "due to shoulder pain and cervicalgia."  (*Id.*, PageID.172).  Joe DeLoach, Ph.D. performed a non-examining review of the records pertaining to Plotkowski's psychological condition, finding no limitation in understanding, remembering, or applying information; interacting with others; or adaption.  (*Id.*, PageID.169).  He found mild limitation in maintaining concentration, persistence, or pace.  (*Id.*).

July 2019 physical therapy discharge records note her report that Plotkowski was "pain free most days and during most activities."  (ECF No. 10-11, PageID.1130).  Plotkowski reported returning to the gym.  (*Id.*).  August 2019 records show a normal range of extremity motion including shoulders, elbows, and hands.  (ECF No. 10-11, PageID.1090).

III.   Framework for Disability Determinations (the Five Steps)

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the

claimant can perform, in view of his or her age, education, and work
experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D.

Mich. Oct. 31, 2008), citing 20 C.F.R. § 416.920; *see also Heston v. Comm'r of*

*Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); 20 C.F.R. § 404.1520.  "The burden

of proof is on the claimant throughout the first four steps. . . .  If the analysis

reaches the fifth step without a finding that claimant is not disabled, the burden

transfers to the [Commissioner]."  *Preslar v. Sec'y of Health & Human Servs.*, 14

F.3d 1107, 1110 (6th Cir. 1994).

Following this sequential analysis, the ALJ found that Plotkowski was not

disabled under the Act.  At Step One, the ALJ found that Plotkowski had not

engaged in substantial gainful activity since the alleged onset date of November

22, 2018 thorough the date of the decision.  (ECF No. 10-2, PageID.83).  At Step

Two, the ALJ found that Plotkowski had the severe impairments of "obesity;

history of mild persistent asthma with use of rescue inhaler; mild sleep apnea;

history of psoriasis/psoriatic arthritis; history of systemic lupus erythematosus;

dermatomyositis; fibromyalgia; degenerative disc disease of the cervical, thoracic

and lumbar spine; scattered osteoarthrosis of the hands and feet; history of

bilateral hammertoes status post-surgical repair/fusion of the 2nd through 4th

proximal interphalangeal joint of the right foot []; and overactive bladder/mixed

urinary incontinence."  (*Id.*, PageID.84).  At Step Three, the ALJ found that

Plotkowski's impairments, whether considered alone or in combination did not meet or medically equal a listed impairment.  (*Id*., PageID.87).

The ALJ then assessed Plotkowski's residual functional capacity ("RFC"), concluding that she was capable of performing sedentary work with the following additional limitations:

> [She] may never climb ladders, ropes or scaffolds; may occasionally balance, stoop, kneel, crouch, crawl, or climb ramps/stairs; must avoid environments with pulmonary irritants that exceed a light industrial setting and poor ventilation, and must avoid exposure to dangerous machinery and unprotected heights; and finally, she needs to work in close proximity to a restroom (within five minutes of the workstation).

(*Id*., PageID.92).

The ALJ cited the VE's hearing testimony in support of her Step Four finding that Plotkowski was not disabled because she could perform her past relevant work as a school secretary as the work was generally performed in the national economy and work as a customer service/order clerk for the photography studio "both as generally performed in the national economy" and as previously performed.  (*Id.*, PageID.100-101, 138).  The ALJ declined to make alternative Step Five findings.

## IV.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision under 42 U.S.C. § 405(g).  Although the court can examine portions of the record that were not evaluated by the ALJ, *Walker v. Sec.*

*of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one.  Judicial review is constrained to deciding whether the ALJ applied the proper legal standards in making his or her decision, and whether the record contains substantial evidence supporting that decision.  *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017)(same).

An ALJ's factual findings must be supported by "substantial evidence."  42 U.S.C. § 405(g).  The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves the judiciary's ability to review decisions by administrative agencies, but it does not grant courts the right to review the evidence de novo.  *Moruzzi v. Comm'r of*

12

*Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).  An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them.  *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight' " of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotations omitted).

V.     Analysis

Plotkowski presents three arguments in favor of remand, contending first that the RFC crafted by the ALJ did not reflect her limitation in concentration, persistence, or pace ("CPP").  (ECF No. 12, PageID.1470).  Next, she argues that the RFC did not reflect the ALJ's Step Two finding that she experienced severe osteoarthritis of the hands.  (*Id.*, PageID.1473).  Third, she takes issue with the summation of her husband's report of her daily activities, arguing that while the ALJ cited portions of the report supporting the disability finding, she ignored the portions supporting the opposite conclusion.  (*Id.*, PageID.1474).  Each argument is addressed in turn below.

A.     Mild Limitation in CPP

In her first argument, Plotkowski says that while the ALJ found mild limitation in CPP, the RFC does not reflect *any* degree of psychological limitation.  (*Id.*, PageID.1470) *citing* (ECF No. 10-2, PageID.86).  Plotkowski cites 20 C.F.R. § 404.1523 which required the ALJ to account for even non-severe impairments when formulating the RFC.  (*Id.*, PageID.1472).  In turn, the Commissioner contends that because the limitation was only mild, the ALJ was not required to include a psychological limitation in the RFC.  (ECF No. 15, PageID.1489).  The Commissioner also argues that the presence of mild psychological limitation does not automatically translate into a *work-related* limitation requiring acknowledgment in the RFC.  (*Id.*, PageID.1491).

14

To determine whether a psychological impairment is severe, the claimant's functional abilities are assessed in the "four broad functional areas:" "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). The degree of limitation is assessed using a five-point scale: "None, mild, moderate, marked, and extreme." § 404.1520(c)(4). A "mild" limitation indicates that "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." § 404, Subpt. P, App. 1 § 12.00F2b. A "mild" limitation equates with a "non-severe" limitation indicating no more than minimal effect on a claimant's work-related activities. § 404.1520(d). "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." § 404.1522. In formulating the RFC, the ALJ must consider both the severe and non-severe impairments. § 404.1545(a)(2).

The lack of reference to psychological limitation in the RFC does not constitute error. First, while the regulations require the ALJ to "consider" the possible effect of a non-severe impairment on the claimant's capacity for work, there is no accompanying requirement that the RFC must include restrictions

reflecting a non-severe condition in the RFC.[4]  In this case, the ALJ not only

"considered" the limitation in CPP but provided a two-paragraph rationale for

finding only mild limitation.  The ALJ noted that Plotkowski demonstrated

consistently good memory and cognitive functioning and was able to drive, read,

manage funds, use the internet, attend her own medical care, and attend church.

(ECF No. 10-2, PageID.86).  The ALJ cited treating records showing normal

concentrational abilities.  (*Id.*).  She noted that Plotkowski did not exhibit

concentrational problems at the hearing.  (*Id.*).  Elsewhere in the determination,

the ALJ cited Bonnano's consultative observation of good memory and full

orientation.  (*Id.*, PageID.99).  The ALJ noted that her determination was

supported by Dr. DeLoach's finding of only mild limitation in CPP.  (*Id.*,

---

[4] For the same reasons, Plotkowski's reliance on SSR 96-8P, 1996 WL 374184, at *5 (July 2, 1996) is unavailing.  (ECF No. 12, PageID.1472).  That Ruling states only that "[i]n assessing RFC, the adjudicator must *consider* limitations and restrictions imposed by . . . even those that are not 'severe.' "  *Id.* at *5.  Plotkowski's also relies on SSR 85-15, 1985 WL 56857, at *6 (1985) ("[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment"), this Ruling refers only to "severe" impairments and nowhere states that the RFC must reflect non-severe impairments.  Likewise, SSR 83-10, 1983 WL 31251 (1983), does not state that the RFC must reflect non-severe impairments.  Moreover, SSR 83-10 pertains to Step Five findings whereas here, the ALJ found at Step Four that Plotkowski was capable of her past relevant work.

PageID.99).  Therefore, the ALJ adequately "considered" the mild limitation in

CPP and by extension, explained her reasons for declining to include any degree

of psychological limitation in the RFC.

Aside from guidance provided by the regulations, the Commissioner cites

several cases from this district and elsewhere within this circuit in which the court

found that the lack of reference to mild psychological limitation in the RFC did

not constitute error.  (ECF No. 15, PageID.1491-1492).  *See Shamsud-Din v.*

*Comm'r of Soc. Sec.*, No. 16-CV-11818, 2017 WL 3574694, at *6 (E.D. Mich.

July 24, 2017) (Majzoub, M.J.), *report and recommendation adopted,* No. 16-CV-

11818, 2017 WL 3531438 (E.D. Mich. Aug. 17, 2017) (Steeh, J.) ("[M]ild

limitations do not require incorporation into an RFC assessment") (internal

citations omitted) (citing *Burrell v. Comm'r of Soc. Sec.*, No. 14-14529, 2016 WL

1165994, at *10 (E.D. Mich. Feb. 29, 2016)), *report and recommendation*

*adopted*, No. 14-14529, 2016 WL 1161548 (E.D. Mich. Mar. 23, 2016);  *Boley v.*

*Astrue*, No. 11-10896, 2012 WL 680393, at *14 (E.D. Mich. Feb. 10,

2012), *report and recommendation adopted*, No. 11-CV-10896, 2012 WL 680392

(E.D. Mich. Mar. 1, 2012);[5] *Fannin v. Berryhill,* No. 3:17-cv-236-DCP, 2019 WL

---

[5] *Shamsud-Din* notes that the failure to address the mild limitations in the
RFC analysis *could* constitute error.  *Id.* at *6 ("Courts in this district have also
found, however, that an ALJ's failure to explain how a claimant's mild
psychological limitations affect the RFC assessment may constitute reversible
error where the ALJ makes no mention of the claimant's mental impairment in the

1434653, at *12 (E.D. Tenn. Mar. 29, 2019) (ALJ provided adequate explanation of why mild limitation in CPP did not affect the RFC); *Walker v. Astrue*, No. 3:11-cv-142, 2012 WL 3187862, at *5 (S.D. Ohio Aug. 3, 2012) (Limitations in CPP "were mild enough so as not to warrant specific limitations in her RFC").

Plotkowski's citation to non-binding authority (even if it were binding) does not compel a different result. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) and *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011),both pertain to the omission of reference to *moderate* limitation in CPP are thus wholly inapplicable given that "moderate" limitation correlates with a "severe" impairment rather than mild, non-severe limitation in CPP in this case. Likewise, *Ramirez v. Barnhart*, 372 F.3d 546, 551 (3d Cir. 2004), where "often" like "moderate" represented the mid-point on five-point scale in measuring concentrational limitation, the ALJ's failure to acknowledge concentrational limitation occurring "often" mandated remand.  Plotkowski's citation to one district court case in this circuit is also unavailing.  (ECF No. 12, PageID.1473). In *Richardson v. Saul*, 511 F. Supp. 3d 791, 799 (E.D. Ky. 2021), the Court found

---

RFC analysis.  *See Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *5-7 (E.D. Mich. Feb. 27, 2015); *Biehl v. Comm'r of Soc. Sec.*, No. 14-10293, 2015 WL 736366, at *21 (E.D. Mich. Feb. 20, 2015).  Consistent with *Shamsud-Din,* the ALJ in this case provided a comprehensive discussion of the mild CPP limitations and the evidence supporting the lack of a psychological limitation in the actual RFC.

that the ALJ's failure to explain the omission of mild psychological limitation

from the RFC warranted a remand.  However, that case is distinguishable for

several reasons: First, the ALJ found that the plaintiff experienced mild limitation

in three rather than one area of psychological functioning.  Second, the accord of

controlling weight to a treating source who found "mild to moderate" limitation in

two areas stood at odds and unexplained by the ALJ's finding of only mild

limitation.

Because the ALJ's discussion of the psychological limitations and the

rationale for the RFC is well explained and supported it should remain

undisturbed.

### B.      Osteoarthritis of the Hands

Plotkowski also argues that the condition of "osteoarthritis of the hands"

required the inclusion of manipulative limitations in the RFC.  (ECF No. 12,

PageID.1474).  In turn, the Commissioner argues that the ALJ did not err in

declining to include manipulative limitations in the RFC.  (ECF No. 15,

PageID.1494-1495) (quoting *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425,

429 (6th Cir. 2007)) ("[C]laimant's severe impairment may or may not affect his

or her functional capacity to work.  One does not necessarily establish the other").

As a threshold matter, while Plotkowski refers to the condition as "severe

osteoarthritis of the hands," the Step Two impairment found by the ALJ was

actually "scattered osteoarthrosis of the hands and feet."  (ECF No. 10-2,

PageID.84).  Further, the ALJ explicitly stated her reasons for finding that the

scattered osteoarthrosis did not mandate manipulative limitations:

> I have not incorporated limitations with regard to the use of the upper
> extremities for bilateral reaching, front, laterally or overhead as the
> longitudinal . . . record does [not] support such limitations.  Range of
> motion [of] the shoulder, elbows and wrists ha[s] generally been within
> normal limits as ha[s] joint stability prior to the claimant beginning
> physical therapy in April 2019, well after the alleged onset date.  Range
> of motion was likewise noted to be normal in the cervical spine.

(*Id.*, PageID.99).  The ALJ elsewhere noted that the physical examination records

showed normal strength and sensation "with only mild loss of range of motion in

the right dominant wrist," "excellent" grip strength, and the ability to knit as a

hobby.  (*Id.*, PageID.89, 95, 100).  The ALJ noted that Plotkowski obtained good

results from therapy.  (*Id.*, PageID.99).  The ALJ's citation to the medical

transcript and finding that manipulative limitations were not warranted is

consistent with my own review of the record.  Moreover, while the ALJ declined

to include manipulative limitations in the RFC, the restriction to sedentary work

requiring no more than 10 pounds lifting or carrying on no more than a frequent

basis also addresses the proffered upper extremity limitations.  *See Griffeth*, *supra,*

217 F. App'x at 429 (Sixth Circuit caselaw does not require that "all impairments

deemed 'severe' [at Step Two] must be included in the hypothetical.  The

regulations recognize that individuals who have the same severe impairment may

have different RFCs depending on their other impairments, pain, and other

symptoms.") (citing § 404.1545(e)).

### C. The Report of Plotkowski's Husband

Plotkowski also contends that the "highly selective" citation to her

husband's assessment amounts to a distortion of the record. (ECF No. 12,

PageID1474-1475). The Commissioner argues to the contrary that the ALJ "fairly

considered" the statement of [Plotkowski's] husband. (ECF No. 15, PageID1497).

The Commissioner correctly notes that Plotkowski's argument does not

include citation to the sections of her husband's assessment that she believes were

unfairly omitted. (*Id.*, PageID.1498). Moreover, the assessment, as cited by the

ALJ, acknowledged the portions of the report detailing Plotkowski's limitations.

The ALJ acknowledged the portion of the assessment stating that Plotkowski

prepared meals with the help of her husband; had difficulty styling her hair and

with overhead activities; and relied on him to do laundry, vacuum, and perform

outdoor work. (ECF No. 10-2, PageID.95-96ECF No. 10-6, PageID.290-291).

However, the ALJ noted that the assessment also stated that Plotkowski could

perform self-care chores, drive, read, use the internet, care for pets, manage funds,

and interact with friends, family, and authority figures. (ECF No. 10-2,

PageID.85-87; ECF No10-6, PageID.290-295). Plotkowski's apparent argument

that the ALJ was required to restate every line of her husband's assessment

supporting a disability finding is without merit.  The ALJ citation to multiple

portions of the assessment establishes that she considered it in full.  *See Kornecky*

*v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 508 (6th Cir. 2006) (ALJ "can consider

all the evidence without directly addressing in his written decision every piece of

evidence submitted by a party").

### D.   In Sum

Plotkowski primarily faults the ALJ for failing to articulate her findings in

support of the RFC.  To the contrary, the ALJ's 21-page determination (over twice

as long as the average 10-page administrative opinion) provides an exceptionally

comprehensive and detailed account of the evidence and her reasons for finding

Plotkowski not disabled.

My recommendation to uphold the administrative findings should not be

read to trivialize Plotkowski's medical concerns.  Nonetheless, because the ALJ's

determination was easily within the "zone of choice" accorded to the fact-finder at

the administrative hearing level, it should not be disturbed by this Court.  *Blakley,*

*supra,* 581 F.3d at 406.

### VI.   Conclusion

For the reasons set forth above, it is RECOMMENDED that the

Commissioner's motion (ECF No. 15) be GRANTED and that Plotkowski's

motion (ECF No. 12) be DENIED and the Commissioner's decision be

AFFIRMED.


Dated:  January 18, 2022                         s/Kimberly G. Altman
Detroit, Michigan                                KIMBERLY G. ALTMAN
                                                 United States Magistrate Judge


## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of appeal.

*Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human

Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues

but fail to raise others with specificity will not preserve all the objections a party

might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human

Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local

231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any

objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 18, 2022.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager